On Application for Rehearing

PER CURIAM.
This court’s opinion of December 21, 2001, is withdrawn and the following opinion is substituted therefor.
In April 1995, L.M.P. n/k/a L.M.K. (the “mother”) and M.P. (the “father”) had a child, D.P. In October 1995, the father was *1254 killed in an automobile accident. His parents, G.P. and A.P. (the “grandparents”) desired to see their grandchild, but the mother refused visitation. In December 1995, the grandparents sued in a Kentucky court for grandparent-visitation rights under Kentucky’s grandparent-visitation statute, Ky.Rev.Stat. Ann. § 405.021 (Banks-Baldwin 2001). In 1996, the Kentucky court entered a final judgment awarding visitation rights to the grandparents; this judgment was affirmed in July 1998 by the Kentucky Court of Appeals.
The mother married A.A.K. (the “stepfather”) in November 1997; in March 1998, the stepfather adopted the child. In November 1998, the Kentucky trial court modified the visitation order, on the petition of the grandparents, because the mother, stepfather, and child had moved to Pensacola, Florida. After the grandparents were denied Thanksgiving visitation, they petitioned the Kentucky court to enforce the visitation order. The mother, meanwhile, had petitioned the Florida court, requesting that it modify the Kentucky court’s 1996 visitation judgment. The parties reached an agreement, and, in February 1999, the Florida court adopted the 1998 Kentucky judgment. The mother, stepfather, and child then moved to Alabama.
In March 2000, the mother sought in the Circuit Court of Houston County, Alabama, a modification of the grandparents’ visitation judgment. The Alabama court determined that it had jurisdiction, pursuant to Ala.Code 1975, § 30-3B-203(2), a portion of Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”). The grandparents petitioned the Kentucky court, requesting that it retain jurisdiction under Kentucky’s version of the UC-CJEA, Ky.Rev.Stat. Ann. § 403-400 et seq. The Kentucky trial court retained jurisdiction, and the mother appealed to the Kentucky Court of Appeals. In an unpublished decision, that court determined that Alabama was the more appropriate forum and vacated the Kentucky trial court’s order retaining jurisdiction.
During this time, the United States Supreme Court decided Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), in which the high court struck down as unconstitutional a Washington third-party visitation statute. The mother thereafter petitioned the Alabama trial court to terminate the grandparents’ visitation rights, arguing, based on Troxel, that Alabama’s grandparent-visitation statute, Ala.Code 1975, § 30-3M.1, was unconstitutional. The attorney general was properly served, and he waived further service or argument. The Alabama trial court addressed the issue of the constitutionality of Alabama’s statute and held it unconstitutional per se. The court declined to enforce or to modify the grandparents’ visitation judgment, stating that it had no jurisdiction to modify another state’s judgment or to entertain a new suit in reference to grandparental visitation under Alabama law. The grandparents appeal that determination.
Since the trial court decided this case, this court has considered the constitutionality of § 30-3M.1. In a plurality decision, this court, after examining Troxel, struck down the rebuttable presumption in favor of grandparental visitation found in § 30-3-4.1(e) and determined that the statute was unconstitutional as applied in that case. R.S.C. v. J.B.C. 812 So.2d 361 (Ala.Civ.App.2001). In Ex parte State of Alabama, 826 So.2d 178 (Ala.Civ.App.2002), this court further addressed the circumstances under which § 30-3-4.1 may be constitutionally applied. However, proper disposition of this case does not turn on whether Alabama’s grandparent-visitation *1255 statute is unconstitutional, either per se or as applied. We therefore must reverse and remand.
The judgment awarding the grandparents visitation with their grandchild was a “child-custody determination” as that term is defined in the UCCJEA. See Ala.Code 1975, § 30-3B-102(3). The purposes of the UCCJEA are to:
“(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
“(2) Promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child;
“(3) Discourage the use of the interstate system for continuing controversies over child custody;
“(4) Deter abductions of children;

“(5) Avoid relitigation of custody decisions of other states in this state;

“(6) Facilitate the enforcement of custody decrees of other states.”
Ala.Code 1975, § 30-3B-101 official comment (emphasis added).
Pursuant to the UCCJEA, and consistent with its stated purposes, judgménts providing for “visitation with respect to a child” are child-custody determinations that must be recognized and enforced by Alabama courts if the other state’s court rendering the judgment exercised jurisdiction in substantial conformity with the UC-CJEA. See §§ 30-3B-102(3) and 30-3B-303(a), Ala.Code 1975. In the present case, the Kentucky court’s determination as to visitation was a final judgment that must be recognized and enforced by Alabama courts.
The effect of the Kentucky court’s judgment awarding grandparent-visitation rights under the Kentucky statute was to decide the entitlement of the grandparents to visitation in the first instance. Parents had the same constitutional rights to direct a child’s upbringing in 1996 that they had in 2000, when the United States Supreme Court issued its decision in Troxel v. Granville.[1] Constitutional objections to the award of visitation to the grandparents could have been raised in opposition to the Kentucky court’s award of such visitation.[2] If they were not, they cannot be asserted now. *1256 See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (party having failed to raise constitutionality of statute in a proceeding to which it was a party and in which it could have raised issue and had it finally determined, was not privileged to remain quiet and raise issue in a subsequent suit); Fields v. City of Fairfield, 273 Ala. 588, 591, 143 So.2d 177, 180 (1962) (upholding contempt finding against petitioners on ground that they failed to challenge constitutionality of statute in original proceeding, but waited until contempt proceeding to do so and noting that “[i]t is for the court of first instance to determine the question of the validity of the law”), rev’d on other grounds, 375 U.S. 248, 84 S.Ct. 360, 11 L.Ed.2d 311 (1963). On the other hand, if constitutional objections were raised in the Kentucky litigation, they were rejected, and the Kentucky court’s determination as to visitation became a final and binding judgment.[3] See REO Broadcasting Consultants v. Martin, 69 Cal.App.4th 489, 81 Cal.Rptr.2d 639 (1999) (when a court acts pursuant to a statute later declared unconstitutional, prior final proceedings based on that statute are immune from collateral attack); People ex rel. First Nat’l Bank of Joliet v. Russel, 283 Ill. 520, 119 N.E. 617 (1918) (“Under the [more recent] decisions of the Supreme Court of the United States, our [earlier] judgment was erroneous; but the conclusiveness of a judgment upon the parties to it does not depend upon whether it is erroneous. Case v. Beauregard, 101 U.S. 688, 25 L.Ed. 1004 (1879). Although it may be based upon unsound principles, it is binding on the parties and on the court rendering it unless reversed or set aside, and it is unaffected by the fact that in another case another court has rendered a different judgment upon the same issues of law or fact”). See also Noel v. Noel, 307 Ky. 132, 210 S.W.2d 142 (1947) (where counterclaim for divorce based upon abandonment and cruel treatment was denied, party to marriage could not bring a subsequent divorce action based upon that conduct; under Kentucky law, res judicata includes every matter that is offered and received or might have been submitted to sustain or defeat a claim or demand); 1 Norman J. Singer, Sutherland Statutory Construction, § 2.07 (5th ed.1993) (the principle of estoppel by judgment has been applied to bar the reopening of a judicial decision that has become final, even where the decision was based on a statute that was later declared unconstitutional in other proceedings).[4] Ab initio consideration of the issue of grandparent visitation in this case also would contravene the full faith and credit clause of the United States Constitution. See U.S. Const., art. IV, § 1; Ashwood v. Ashwood, 371 So.2d 924, 928 (Ala.Civ.App.1979) (holding that even though Alabama court had jurisdiction over the parties and the issue of custody, previous custody order issued by a Pennsylvania court was entitled to full faith and credit under U.S. Constitution, art. IV, § 1).
The Houston Circuit Court had jurisdiction in the present case. Under the UCCJEA, an Alabama court has juris *1257 diction to modify a child-custody determination when, among other things, the rendering state’s court has determined that continuing exclusive jurisdiction no longer exists in that state. See § 30-3B-203(l), Ala.Code 1975. As previously noted, the Kentucky courts have determined that Alabama courts should exercise jurisdiction over custody and visitation matters.
However, the fact that the Houston Circuit Court had jurisdiction to modify the grandparents’ visitation rights as the mother requested does not mean that it had jurisdiction to redetermine, ab initio, whether the grandparents should have been granted visitation rights—the previous visitation judgment “remain[ed] a custody determination of the state that issued it.” See Ala.Code 1975, § 30-3B-303 official comment. Nor did it fall to the Houston Circuit Court to determine whether Ala.Code 1975, § 30-3-4.1, was unconstitutional; that statute was not at issue in this case.
What does fall to the Houston Circuit Court is the task of exercising its discretion to determine whether to modify the visitation rights granted under the previous judgment. In Ashwood, supra, this court recognized that a circuit court of this state was obligated under the United States Constitution to give full faith and credit to a Pennsylvania judgment awarding custody of a child to its mother under Pennsylvania law. In light of that obligation, but also recognizing that the Alabama circuit court now had jurisdiction over the parties and that, under Alabama law, determinations regarding a child’s best interests never become res judicata, 371 So.2d at 928, this court held that the proper role of the Alabama court was “to focus its inquiry on the issues of whether, since the date of the Pennsylvania decree, there has been a sufficient change of circumstances to warrant a change of custody.” 371 So.2d at 928 (citations omitted).[5]
The Houston Circuit Court may decide, consistent with Alabama law, that such a material change in circumstances has occurred that a prospective modification or termination of visitation is warranted in the best interests of the child, just as it could in cases not involving a foreign judgment. See, e.g., In re Stewart, 481 So.2d 899, 901 (Ala.Civ.App.1985). Nevertheless, the trial court’s jurisdiction to modify future visitation should not be equated with the power to “undo” the Kentucky court’s judgment by again considering the question of the constitutionality of the original court-ordered grandparental visitation, a question that is no longer properly at issue in this particular case.
In fight of the foregoing, the judgment of the trial court is reversed, and the cause is remanded for further proceedings and/or for the trial court to make findings consistent with this opinion.
OPINION OF DECEMBER 21, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.

. The Troxel decision did not change the law; it merely recognized or declared the law. See, e.g., Harper v. Virginia Dep’t of Taxation, 509 U.S. 86, 107, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (Scalia, J., concurring) (explaining that judicial power is a power “not delegated to pronounce a new law, but to maintain and expound the old one”).
"Courts do not and cannot change the law by overruling or modifying former opinions. They only declare it by correcting an imperfect or erroneous view. The law itself remains the same.... An erroneous ruling may in some circumstances become the law of the particular case, but this will not prevent the court in another action from holding to the contrary.”
Crigler v. Shepler, 79 Kan. 834, 842, 101 P. 619, 621 (1909).

. It is not clear from the record whether constitutional objections were raised in the Kentucky litigation. A copy of the unpublished opinion by which the Kentucky Court of Appeals affirmed the visitation judgment is part of the record on appeal. Although that opinion contains a statement that the constitutionality of Kentucky's grandparent-visitation statute "has been settled” (citing the reader to King v. King, 828 S.W.2d 630 (Ky.1992)), there is no other description of any argument presented to the Kentucky Court of Appeals with respect to the constitutionality of the statute. At the outset of the opinion, the Kentucky Court of Appeals outlines three *1256 arguments raised on appeal, none of which is the constitutionality of the Kentucky statute.

. The record contains no indication that there was any effort to obtain any appellate review of the decision of the Kentucky Court of Appeals.

. For a discussion of the effect of a judicial decision holding a statute unconstitutional on a previous, collateral judgment entered in reliance on that statute, see Oliver P. Field, The Effect of an Unconstitutional Statute 150-97 (DaCapo Press 3d ed.1971) (1935); see also Note, The Effect of Declaring a Statute Unconstitutional, 29 Colum. L.Rev. 1140, 1143-44 (1929).

. See generally Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445-46 (1947) ("True, we have often declared that the question of rightful custody of the child is never res judicata. But we have also stated that it does not follow that a former decree of a court of competent jurisdiction awarding the custody to one of two contesting parties is to be accorded no weight in later proceedings. Judicial findings upon the same, or substantially the same, conditions are presumed correct. The burden is on the party seeking a change of custody to show some change of conditions or other substantial reason therefor.”).